IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Andrew Plummer,                    )
                                   )
                    Plaintiff,     )          Civil Action No.2:12-cv-3412-TLW-BHH
                                   )
          v.                       )          **ORDER AND**
                                   )          **REPORT AND RECOMMENDATION**
Warden Tim Riley, *et al.*,        )          **OF MAGISTRATE JUDGE**
                                   )
                    Defendants.    )
_____)

The Plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court upon Defendants' Motion for Summary Judgement (Dkt. No. 70) and Plaintiff's Motion to Amend (Dkt. No. 48).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

The Plaintiff brought the instant action on or about November 21, 2012. (See Dkt. No. 1.) Plaintiff filed an Amended Complaint on or about March 21, 2013. (See Dkt. No. 25.) Defendants answered Plaintiff's original Complaint on April 1, 2013; they answered Plaintiff's Amended Complaint on April 11, 2013. (Dkt. No. 27; Dkt. No. 33.) On or about May 29, 2013, Plaintiff filed a Motion to Amend his Complaint. (See Dkt. No. 48.) On August 5, 2013, Defendants filed a Motion for Summary Judgment. (Dkt. No. 70.) By order filed August 6, 2013, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 71.) Plaintiff filed his Response in Opposition to the Motion for Summary Judgment on or about August 21, 2013. (Dkt. No. 77.) Defendants filed a Reply, to which Plaintiff filed a Sur-Reply. (Dkt. No. 87; Dkt. No. 88.)

## **PROCEDURAL FACTS**

Plaintiff, who is currently housed at Tyger River Correctional Institution ("TRCI" or "Tyger River"), alleges claims pursuant to 42 U.S.C. § 1983 for "a variety of . . . events that started at Kershaw Corrections and continued at Tyger River." (Dkt. No. 1 at 3 of 5.) Plaintiff alleges that in 2010, he filed a grievance against Prison Chaplain Potoka "for discrimination towards the Rastafarian services Plaintiff was attending" at Kershaw Correctional Institution ("KCI" or "Kershaw"). (Dkt. No. 1 at 3 of 5.) Plaintiff complains that, following the grievance, Chaplain Potoka "had Plaintiff and several other attendants of the Rastafarian services removed off the prison outcount stating that Rastafarians had to announce themselves as Rastafarian to attend services" at Kershaw. (Id.) Plaintiff alleges that when he complained about the "outcount," Potoka "retaliated by suspending Plaintiff from the chapel on April 28, 2011 for an undetermined amount of time." (Id.) Plaintiff states that he was then "constantly harassed while working in the Kershaw prison kitchen by the kitchen supervisor." (Id.) Plaintiff contends Ms. Hough failed to process his grievances to "cover up" policy and constitutional violations. (Id.)

Plaintiff also complains that in August or September of 2011, Major Seward "accused Plaintiff of being in a gang with several other inmates and threatened to place Plaintiff on security detention." (Id.) Plaintiff alleges that after he filed a grievance against Major Seward, Plaintiff "was moved intentionally to a dorm labeled by officers as a trouble dorm." (Id.) According to Plaintiff, Major Seward "had Plaintiff terminated from [the] kitchen for no identified reason other than retaliation to grievance complaint that was unjustly unprocessed by Ms. Hough." (Id.)

Plaintiff further states, "A temporary restraining order was filed against Kershaw C.I. on January 6, 2012, a copy was delivered by mailroom who was accompanied by Officer Stokes on January 12, 2012 who came back later in the day and assaulted Plaintiff by

2

means of excessive force." (Id.) Plaintiff alleges that on January 12, he "was placed on Kershaw lock up unit AND charged with assault on Officer Stokes in attempts to cover up excessive force." (Id.) Plaintiff also complains that on February 6, 2012, he received notification of rejected mail indicating that his Sports Illustrated magazines "were destroyed by contraband at the instructions of" C. Amason "in violation of prison policy." (Id.) Plaintiff alleges that on February 21, 2012, he was transferred to Tyger River "for unknown reasons." (Id.) According to Plaintiff, he "expressed to Tyger River mental health" that he suffered from bipolar, schizophrenic, and post traumatic stress disorder and was refused mental health medication and treatment by mental health Ms. Gardner while at Kershaw C.I." (Id.) Plaintiff asserts that the only medication ordered by the Tyger River psychiatrist was medication for PTSD. (Id.) He complains that his many grievances were "intentionally unprocessed" by Ms. Lecompt. (Id.)

Plaintiff also appears to complain about access to the courts; Plaintiff alleges that while "litigating a prior civil case," he made attempts to order writing material to address a Report and Recommendation and the "mailroom refused to send Plaintiff the amount of material required by policy to adequately respond to the Report and Recommendation which placed limits on [his] response and caused Plaintiff['s] case to be dismissed." (Id.)

Plaintiff alleges that on July 9, 2012, one day before he was scheduled to be taken off lock-up and released to general population, "the classification Mr. Medvar had Plaintiff placed on security detention stating that Warden Tim Riley deem[ed] him a threat to staff." (Id.) Plaintiff states, "The Plaintiff was retaliated against by Tim Riley and classification in attempt to cover up the constitutional violations by Kershaw and Tyger River staff and the mailroom has been throwing away Plaintiff's magazines and incoming and outgoing mail to family which is being done by SMU Supervisor Captain Tucker who is also head of contraband at Kershaw C.I." (Id.)

3

Plaintiff appears to complain that since Grievance TYRCI-0413-12 "was written against Warden Tim Riley," Plaintiff "has been completely denied grievances to complain about officer misconduct on Tyger River SMU." (Dkt. No. 1 at 4 of 5.) Plaintiff alleges that Captain Tucker "is keeping the grievances from inmates who file complaints against him or his officers." (Id.) Plaintiff complains that Captain Tucker searched Plaintiff's cell on October 23, 2012, and again the following day. (Id.) Plaintiff asserts that Tucker charged Plaintiff with contraband, a charge that was later dismissed, and his cell was completely stripped out for 72 hours; even his pain mediation for his back was taken. (Id.) Plaintiff alleges that on November 6, 2012, "Plaintiff was charged by Tucker for gang material which Captain Tucker planted . . . in further retaliation." (Id.)

Plaintiff complains that he is not able to exhaust his administrative remedies and about an alleged policy preventing inmates from contacting attorneys "unless the attorney is appointed to [a] case already." (Id.)

In the "Relief" section of his Complaint, Plaintiff states that he seeks damages, an order for a mental health evaluation, a restraining order, and transfer to another institution. (Dkt. No. 1 at 5 of 5.)

Plaintiff filed an Amended Complaint on or about March 21, 2013. (Dkt. No. 25.) In this filing, Plaintiff elaborates on his claim against Chaplain Potoka. (See Dkt. No. 25 at 1 of 4.) Plaintiff alleges that he filed a grievance against Chaplain Potoka for "not allowing the Rastafarian attendants to celebrate Kwanza which is an annual celebration for African Americans around the United States." (Id.) Plaintiff contends that "he was retaliated against by Chaplain and other Kershaw employees for exercising his grievance KRCI-2412-10 [o]n behalf of the Rastafarian community." (Id.) According to Plaintiff, Chaplain Potoka "denied Plaintiff his constitutionally protected right not to be forced to change religion from Catholic to Rastafarian in order to attend Rastafarian worship." (Id.) Plaintiff states, "Plaintiff . . .

4

refused to change religion and was suspended from chapel by Chaplain Potoka on April 28, 2011 in further retaliation for KRCI-2412-10." (Id.) Plaintiff complains that the "unknown" grievance coordinator held KRCI-2412-10 for over two years, denying him a meaningful way to exhaust his administrative remedies. (Id.)

Plaintiff cites the Religious Freedom Restoration Act in his Amended Complaint. (Id.) Plaintiff asserts that the prison and Chaplain Potoka violated Plaintiff's due process and equal protection rights because the Rastafarian community "were the only religion sent the January 19, 2011 memorandum and were singled out." (Id.) Plaintiff alleges he was not afforded any hearing "and did not receive any disciplinary charge to warrant suspension." (Id.) According to Plaintiff, Rastafarians "were continuously harassed by Kershaw officials by means of gang profiling, being placed on the security threat group list, and being the only group frisked upon entering the chapel. (Id.) Plaintiff alleges that on December 8, 2011, Major Seward terminated Plaintiff from working in the kitchen "for no reason at all which prevented . . . Plaintiff from receiving work credits towards maxout from prison without due process." (Id.) Plaintiff also asserts that on January 12, 2012, he was "attacked" by Officer Stokes "who used excessive force and caused Plaintiff medical attention." (Id.)

Plaintiff complains that "classifications Candi Cannon is allowing Tyger River C.I. and Tim Riley to keep Plaintiff to keep Plaintiff on security detention without due process of law and denying [the] Plaintiff the right to be present at review hearings every 30 days to present witnesses or evidence," in contravention of SCDC policy. (Dkt. No. 25 at 3 of 4.) Plaintiff reiterates and expounds upon previous complaints regarding lack of access to the courts. Plaintiff asserts that on March 8, 2012, his civil suit 2:10-cv-01966-TLW-BHH was dismissed, and "because of Policy Ps-10.08 [he] could not show any court order deadline and was denied legal material by [the] special management unit at Tyger River." (Id.)

He additionally complains about the mental health treatment provided by SCDC. (Id.) He asserts he is being denied "adequate counseling," and although he is on medication for his PTSD, he is being denied medication for his schizophrenia and bipolar disorder. (Id.) Plaintiff alleges that Ms. Hooks is "refusing to request treatment from [a] psychiatrist or have Plaintiff transferred" to a twenty-four hour care facility as Plaintiff requested. (Id.)

Plaintiff alleges that the "Tyger River Special Management Unit has denied Plaintiff exercise from February 1, 2012 to February 1, 2014." (Id.)

## APPLICABLE LAW

### Summary Judgment Motion Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

Defendants contend they are entitled to summary judgment for several reasons. (See Dkt. No. 70-1.) The undersigned addresses Plaintiff's claims below.

6

**1. Deliberate Indifference**[1]

Plaintiff seeks to bring a claim for deliberate indifference to serious medical needs. Plaintiff alleges that when he was transferred to Tyger River, he "expressed to Tyger River mental health" that he suffered from bipolar, schizophrenic, and post traumatic stress disorder and was refused mental health medication and treatment by mental health Ms. Gardner while at Kershaw C.I." (Dkt. No. 1 at 3 of 5.) He complains that the only medication ordered by the Tyger River psychiatrist was medication for PTSD, and that he is being denied medication for his schizophrenia and bipolar disorder. (Id.; see also Dkt. No. 25 at 3 of 4.) He contends that Ms. Hooks is "refusing to request treatment from [a] psychiatrist or have Plaintiff transferred" to a twenty-four hour care facility as Plaintiff requested. (Dkt. No. 25 at 3 of 4.)[2]

In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104 (internal citations omitted). To prevail on an Eighth Amendment deliberate indifference claim, "a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was sufficiently serious, and (2) that subjectively the prison officials acted with a sufficiently culpable state of mind." Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (internal quotation marks and citations omitted). The first element "is satisfied by a serious medical condition," while the second element "is satisfied by showing deliberate indifference

---

[1] In their Motion for Summary Judgment, Defendants argued that Plaintiff's excessive force claim fails. As noted by Plaintiff in his Response in Opposition, however, Stokes is not a defendant in the instant case. (See Dkt. No. 77 at 7 of 10.)

[2] In his Response in Opposition, Plaintiff asserts Defendants were deliberately indifferent to his serious medical needs by denying back pain medication for 72 hours. (See Dkt. No. 77 at 8 of 10.) Such a claim is markedly different from the deliberate indifference claim Plaintiff raised in his Complaint and Amended Complaint.

by prison officials." Id. It is well-settled that mere negligence does not constitute deliberate indifference. Estelle, 429 U.S. at 105-06; Grayson v. Peed, 195 F.3d 692, 695-96 (4th Cir. 1999); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (holding that "[d]isagreements between an inmate and a physician over the inmate's proper medical care" are not sufficient to raise an Eighth Amendment claim pursuant to § 1983).

Defendants attached the Affidavit of Victoria Hooks, a mental health counselor employed by SCDC, to their Motion for Summary Judgment. (Dkt. No. 70-5.) Ms. Hooks provided the following time line of Plaintiff's "encounters through mental health":

6. Inmate Plummer was seen by Dr. Pacheco (a psychiatrist) on April 11, 2012 and was placed on Prazosin. His primary diagnosis was PTSD R/O Malingering.

7. April 16, 2012, Inmate Plummer refused the Prazosin.

8. April 19, 2012, Inmate Plummer was seen by me.

9. April 27, 2012, Incident reported wherein Inmate Plummer flushed medication down the toilet.

10. May 1, 2012, Inmate Plummer refused Abilify (Aripiprazole). Later, medication was taken to Inmate Plummer, but he refused the medication and refused to sign the form.

11. May 3, 2012, Inmate Plummer again refused the Abilify and that medication was discontinued.

12. May 18, 2012, Inmate Plummer was seen by me.

13. June 18, 2012, Inmate Plummer was seen by me.

14. July 12, 2012, Inmate Plummer saw psychiatrist and was placed back on Abilify medication.

15. July 18, 2012, Inmate Plummer was seen by me.

16. August 17, 2012, Inmate Plummer was seen by me.

17. September 17, 2012, Inmate Plummer was seen by another mental health counselor, Dena West.

18. October 11, 2012, Inmate Plummer was seen by psychiatrist.

19. October 17, 2012, Inmate Plummer was seen by me.

20. October 25, 2012, Inmate Plummer refused his Abilify and Tegretol (Carbamazepine) medications.

21. November 4, 2012, Inmate Plummer refused medications.

22. November 7, 2012, Inmate Plummer refused medications.

23. November 8, 2012, Inmate Plummer was seen by psychiatrist.

24. November 10, 2012, Inmate Plummer refused lab work ordered by psychiatrist.

25. November 14, 2012, Inmate Plummer ate in spite of knowing lab work had been ordered by the psychiatrist and was to be performed after fasting.

26. November 15, 2012, Inmate Plummer ate in spite of knowing lab work had been ordered by psychiatrist and was to be performed after fasting. Further, Inmate Plummer refused medication that was just ordered.

27. November 16, 2012, Inmate Plummer was seen and he refused medications.

28. November 20, 2012, Inderal (Propranolol) medication was discontinued because Plummer refused to take it.

29. November 27, 2012, Inmate Plummer is not taking Abilify medication.

30. December 14, 2012, Inmate Plummer was seen by me.

31. January 2, 2013, Inmate Plummer was sen by me.

32. January 14, 2013, Inmate Plummer was seen by another mental health counselor, Alexa Evans.

33. January 16, 2013, Inmate Plummer refused Abilify medication.

34. February 7, 2013, Inmate Plummer was scheduled to see psychiatrist, but the appointment was cancelled.

35. February 14, 2013, Inmate Plummer was seen and he saw the psychiatrist.

9

36. March 12, 2013, Inmate Plummer refused Abilify medication.

37. March 14, 2013, Inmate Plummer was seen by me.

38. March 31, 2013, Inmate Plummer was seen by me.

39. April 11, 2013, Inmate Plummer was seen by me.

40. May 8, 2013, Inmate Plummer was seen by a new mental health counselor, Lisa Judd, and was reassigned to her as his primary counselor.

41. Inmate Plummer was always seen by your deponent when indicated. He has a documented history of refusing medication and being non compliant with mental health and/or medical directives. He received adequate mental health care and counseling while at Tyger River Correctional Institution.

(Hooks Aff. ¶¶ 6-41.)

The undersigned recommends granting summary judgment to Defendants on Plaintiff's claim of deliberate indifference to his serious medical needs. As detailed by Ms. Hooks, Defendant has received extensive mental health care after his transfer to Tyger River Correctional Institution in February of 2012. Although Plaintiff asserts he was denied medication for certain disorders, evidence presented by Defendants indicates that Plaintiff was taken off Abilify in May of 2012 after twice refusing it, was placed back on Abilify after seeing the psychiatrist in July of 2012, and refused it several times thereafter in November of 2012; January of 2013; and March of 2013. (See generally Hook Aff.) Plaintiff was seen by the psychiatrist on multiple occasions, and generally seen by mental heath approximately once a month. (See id.) Although Plaintiff may have disagreed with the mental health treatment he was receiving, it is clear that Defendants were not deliberately indifferent to his serious medical needs. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) ("Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged."); United States v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011) ("Although an inmate certainly has a right to

10

necessary medical treatment, he does not have a right to demand that the opinion of his pre-imprisonment doctor be permitted to override the reasonable professional judgment of the prison's medical team."). The undersigned therefore recommends granting summary judgment to Defendants on this claim.

## 2. Access to the Courts

Plaintiff also appears to complain about access to the courts; Plaintiff alleges that while "litigating a prior civil case," he made attempts to order writing material to address a Report and Recommendation and the "mailroom refused to send Plaintiff the amount of material required by policy to adequately respond to the Report and Recommendation which placed limits on [his] response and caused Plaintiff['s] case to be dismissed." (Dkt. No. 1 at 3 of 5.) Specifically, Plaintiff contends that on March 8, 2012, his civil suit 2:10-cv-01966-TLW-BHH was dismissed, and "because of Policy Ps-10.08 [he] could not show any court order deadline and was denied legal material by [the] special management unit at Tyger River." (Dkt. No. 25 at 3 of 4.)

As the Supreme Court stated in <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977), "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." However, in order to succeed on any access-to-the-courts claim, a prisoner is required to show actual prejudice to his litigation. <u>Lewis v. Casey</u>, 518 U.S. 343, 349 (1996); <u>see also Cochran v. Morris</u>, 73 F.3d 1310, 1317 (4th Cir. 1996). A prisoner can satisfy this requirement by demonstrating that a non-frivolous legal claim was frustrated or impeded by some actual deprivation of access. In addition, in asserting a claim for denial of access to the courts, "a prisoner cannot rely on conclusory allegations. Specificity is necessary . . . ." <u>Cochran</u>, 73 F.3d at 1317 (citing <u>White v. White</u>, 886 F.2d 721, 723-24 (4th Cir. 1989)).

11

In <u>Plummer v. South Carolina, et al.</u>, Civ. A. No. 2:10-cv-01966-TLW, the undersigned issued a Report and Recommendation on December 9, 2011. (<u>See</u> Dkt. No. 93 in 2:10-cv-01966-TLW.) Plaintiff filed Objections as well as a Motion for Temporary Restraining Order on or about January 3, 2012. (<u>See</u> Dkt. No. 97; Dkt. No. 98 in 2:10-cv-01966-TLW.) On March 8, 2012, Judge Wooten adopted the Report and Recommendation, granted defendants' Motion for Summary Judgment as to the federal claims, and dismissed the state law claims without prejudice. (Dkt. No. 103 in 2:10-cv-01966-TLW.)

Plaintiff's previous case was not dismissed because he missed a deadline, failed to file a response to a motion, or failed to file objections to the Report and Recommendation. Instead, the Motion for Summary Judgment was granted, and the case was disposed of on the merits. Contrary to Plaintiff's allegations, it does not appear that Plaintiff was denied access to the courts; instead, Plaintiff fully litigated his prior case. Plaintiff has not produced evidence of actual injury, and Defendants are therefore entitled to summary judgment on this claim. <u>See Oliver v. Fauver</u>, 118 F.3d 175, 178 (3d Cir.1997) (dismissing claim that corrections officers opened outgoing legal mail, as prisoner suffered no actual injury due to such alleged interference, where court received his papers and decided claim); <u>Hayes v. Stanley</u>, Civ. A. No. 503-CT-759, 2006 WL 4128485, at *2 (W.D.N.C. Jan. 30, 2006) ("Upon a review of the court's docket in the prior case, there is no evidence that plaintiff missed any deadlines. Rather, it appears that plaintiff was given the opportunity to and did respond to all motions. Accordingly, there is no evidence of prejudice in the prior proceeding, and plaintiff has provided no other evidence of actual injury."). In his Response in Opposition, Plaintiff now claims–for the first time–that he was unable to appeal the dismissal order. He has not identified which issue(s) he would have appealed, or how the District Court erred in the previous case. Accordingly, Plaintiff has failed to show prejudice.

**3. Lack of Exercise**

Plaintiff asserts that the "Tyger River Special Management Unit has denied Plaintiff exercise from February 21, 2012 to February 1, 2013 . . . ." (Dkt. No. 25 at 3 of 4.) "[I]n certain circumstances, restricting inmates' opportunities for physical exercise constitutes cruel and unusual punishment in violation of the Eighth Amendment." Clay v. Miller, 626 F.2d 345, 347 (4th Cir.1980). The Fourth Circuit has held that in order to sustain a Section 1983 claim for lack of exercise, a plaintiff must produce "evidence that he has sustained a[] serious or significant physical or emotional injury as a result of these conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993). The plaintiff has not made an allegation of physical or emotional injury related to a lack of out of cell recreation, nor has he set forth evidence of the same. Thus, the plaintiff's allegations do not rise to a constitutional violation, and the defendants are therefore entitled to summary judgment on this claim. See Wright v. Webber, C.A. No. 1:11–2199–TLW–SVH, 2012 WL 3303521, at *6 (D.S.C. July 3, 2012) (granting summary judgment on inmate's Eighth Amendment claim alleging he was denied outside recreation), R & R adopted at 2012 WL 3308030 (D.S.C. Aug.13, 2012), aff'd 507 Fed. App'x 278 (4th Cir. 2013).[3]

**4. Classification**

Plaintiff appears to complain about his placement in the SMU; he asserts that on July 9, 2012, one day before he was scheduled to be taken off lock-up and released to the general population, "the classification Mr. Medvar had Plaintiff placed on security detention stating that Warden Tim Riley deem[ed] him a threat to staff." (Dkt. No. 1 at 3 of 5.) Plaintiff asserts that "classifications Candi Cannon is allowing Tyger River C.I. and Tim Riley to keep

---

[3] Any other conditions of confinement claim Plaintiff brings in the instant action fails for the same reason. Plaintiff's Complaint and Amended Complaint are full of conclusory allegations. (See generally Dkt. No. 1; Dkt. No. 25.) To the extent he attempts to bring other claims, such claims are supported by conclusory allegations and therefore do not warrant relief. Brown v. Zavaras, 63 F.3d 967, 972 (10th Cir.1995) (holding pro se litigants must do more than make mere conclusory statements regarding constitutional claims).

Plaintiff on security detention without due process of law and denying [the] Plaintiff the right to be present at review hearings every 30 days to present witnesses or evidence," in contravention of SCDC policy." (Dkt. No. 25 at 3 of 4.)

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). It is well settled that prisoners do not have a constitutionally recognized liberty interest in a particular security classification or prison placement. Hewitt v. Helms, 459 U.S. 460, 468 (1983) (no constitutional right under the Due Process Clause to a particular security classification or prison placement). In Sandin v. Connor, 515 U.S. 472 (1995), however, the United States Supreme Court held that a change in the condition of a prisoner's confinement that does not exceed the scope of the original sentence gives rise to a federally-protected liberty interest only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

In the instant case, Plaintiff alleges he was placed on security detention on or about July 9, 2012; he filed the instant lawsuit on or about November 21, 2012. (See Dkt. No. 1.) Defendants contend that Plaintiff waived the right to appear via a Classification Waiver that provided, *inter alia*,

> I do not wish to **appear** before the Classification Committee. I understand that by not appearing I waive any grievance rights that I may have regarding any decisions made by the Institutional Classification Committee.

(Dkt. No. 70-3 at 51 of 53.) In his Response in Opposition, Plaintiff asserts that the document was signed in June of 2011, and he was not placed on lockup until January of 2012. (See Dkt. No. 77 at 9 of 10.)

14

Of course, Plaintiff was placed on lockup as a result of his disciplinary charge–and subsequent conviction–for assaulting an employee of SCDC. At the time he filed the instant action, he had been in lockup on security detention for approximately four and a half months. Such a period of detention does not amount to a constitutional violation. See Beverati v. Smith, 120 F.3d 500 (4th Cir. 1997). Furthermore, even if the parties dispute the purpose of the form, Defendants are entitled to qualified immunity on this claim. The doctrine of qualified immunity protects governmental officials performing discretionary functions from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When an official properly asserts the defense of qualified immunity, the official is entitled to summary judgment if either: (1) the facts, taken in the light most favorable to the plaintiff, do not present the elements necessary to state a violation of a constitutional right; or (2) the right was not clearly established, such that it would not have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Pearson v. Callahan, 555 U.S. 223, 231-32 (2009). Even if Defendants were incorrect about the purpose of the Classification Waiver, it would not have been clear to a reasonable individual–in light of the existence of such a document–that Plaintiff's presence at the classification hearings was required, and the records submitted by Defendants reveal that Plaintiff's custody status was reviewed approximately every thirty days. (See Dkt. No. 70-3 at 53-54 of 56.) The undersigned therefore recommends granting summary judgment to Defendants' on Plaintiff's classification claim. See Beverati, 120 F.3d 500; see also Hewitt, 459 U.S. at 476.[4]

---

[4]Although Sandin abrogated Hewitt's "methodology for establishing the liberty interest," the case "remain[s] instructive for [its] description of the appropriate level of procedural safeguards." Wilkinson, 545 U.S. at 229.

**5. Grievances**

To the extent Plaintiff seeks to bring a § 1983 claim related to processing his grievances, such a claim fails, as there is no constitutional right to a grievance procedure. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]here is no constitutional right to participate in grievance proceedings."); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983); see also Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue.").

**6. Work and Good Time Credits**

Plaintiff complains that "[c]lassification Ms. Candi Cannon is responsible for assuring that all good time credits are correct which hasn't taken place as the Kershaw classification was made aware through staff request form and grievance complaints that work credits and good time was incorrect and not in compliance" with SCDC policy. (Dkt. No. 25 at 3 of 4.) The undersigned recommends granting summary judgment to Defendants on this § 1983 claim. As noted in Wilkinson v. Dotson, 544 U.S. 74 (2005), the Supreme Court "has held that a prisoner in state custody cannot use a § 1983 action to challenge 'the fact or duration of his confinement.'" Wilkinson, 544 U.S. at 78 (quoting Preiser v. Rodriguez, 411 U.S. 475, 489 (1973)). Plaintiff is not entitled to relief pursuant to § 1983 on the instant claim. See Doe v. S.C. Dep't of Corrs., Civ. A. No. 3:07-4109-CMC-JRM, 2008 WL 5635956 (D.S.C. Feb. 13, 2008), aff'd 286 Fed. App'x 47 (4th Cir. 2008).

**7. Retaliation by Chaplain Potoka**

Plaintiff appears to allege that Chaplain Potoka retaliated against Plaintiff after Plaintiff filed a grievance against Potoka. Specifically, Plaintiff alleges that he filed a grievance against Chaplain Potoka for "not allowing the Rastafarian attendants to celebrate

16

Kwanza which is an annual celebration for African Americans around the United States."
(Dkt. No. 25 at 1 of 4.) Plaintiff asserts that, following the grievance, Chaplain Potoka "had
Plaintiff and several other attendants of the Rastafarian services removed off the prison
outcount stating that Rastafarians had to announce themselves as Rastafarian to attend
services" at Kershaw. (Dkt. No. 1 at 3 of 5.) According to Plaintiff, when he complained
about the "outcount," Potoka "retaliated by suspending Plaintiff from the chapel on April 28,
2011 for an undetermined amount of time." (Id.) Plaintiff also asserts that Potoka "denied
Plaintiff his constitutionally protected right not to be forced to change religion from Catholic
to Rastafarian in order to attend Rastafarian worship." (Dkt. No. 25 at 1 of 4.) Plaintiff
states, "Plaintiff . . . refused to change religion and was suspended from chapel by Chaplain
Potoka on April 28, 2011 in further retaliation for KRCI-2412-10." (Id.)

        To establish a First Amendment retaliation claim under § 1983, a plaintiff must show
that: (1) his speech was protected; (2) the defendant's alleged retaliatory action adversely
affected the plaintiff's constitutionally protected speech; and (3) a causal relationship exists
between the plaintiff's speech and the defendant's retaliatory action. Suarez Corp. Indus.
v. McGraw, 202 F.3d 676, 685–86 (4th Cir. 2000). Bare or conclusory assertions of
retaliation are insufficient to establish a retaliation claim. Adams v. Rice, 40 F.3d 72, 74 (4th
Cir. 1994). An inmate must allege facts showing his exercise of a constitutionally protected
right was a substantial factor motivating the retaliatory action. See, e.g., Cochran v. Morris,
73 F.3d 1310, 1318 (4th Cir. 1996); Hughes v. Bledsoe, 48 F.3d 1376, 1387 n. 11 (4th Cir.
1995). An inmate must also allege facts showing that he "suffered some adversity in
response to [his] exercise of [constitutionally] protected rights." American Civil Liberties
Union of Md., Inc. v. Wicomico Cty., Md., 999 F.2d 780, 785 (4th Cir. 1993). "A plaintiff
suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a

17

person of ordinary firmness from the exercise of [the protected] rights." <u>Constantine v. Rectors & Visitors of George Mason Univ.</u>, 411 F.3d 474, 500 (4th Cir. 2005).

Although the Fourth Circuit has not issued a published opinion on the question of whether the filing of a grievance by a prisoner implicates the First Amendment, several circuits have held that prison officials may not retaliate against a prisoner for filing grievances. <u>See Hill v. Lapin</u>, 630 F.3d 468, 472 (6th Cir. 2010) (noting that a prisoner has an "undisputed First Amendment right to file grievances against prison officials on his own behalf"); <u>Haynes v. Stephenson</u>, 588 F.3d 1152, 1155–56 (8th Cir. 2009) ("The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity."); <u>Boxer X v. Harris</u>, 437 F.3d 1107, 1112 (11th Cir. 2006) ("First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment."); <u>see also Gullett v. Wilt</u>, 869 F.2d 593, 1989 WL 14614 at *2 (4th Cir. 1989) (unpublished table decision) (noting that First Amendment rights "are implicated by [the plaintiff's] claim that he is being transferred because prison officials are retaliating for [his] numerous institutional grievances").

Potoka filed an Affidavit in support of his Motion for Summary Judgment. (<u>See</u> Dkt. No. 70-4.) According to Potoka, the Senior Chaplain at Kershaw, "Kwanza is a social program, not a religious observance," and "such social programs require time, space and resources that were not available in the chapel during all relevant times . . . ." (Potoka Aff. ¶¶ 1, 3.) Potoka states that the "Rastafarian worship services are open to all inmates who sign up to attend the services," and "all inmates are allowed to sign up for worship programs." (<u>Id</u>. ¶¶ 4-5.) Study groups, however, are different: "[i]nmates are allowed to sign up for study groups of the religion they declare as their religion with the South Carolina Department of Corrections." (<u>Id</u>. ¶ 6; <u>see also id</u>. ¶ 10.) Despite this rule, inmates may

change their "religious preference at any time in order to participate in a study group of a different religion." (Id. ¶ 7.) Potoka states that Plaintiff "declared his religion as Catholic" with SCDC and "never made the necessary change to declare himself as Rastafarian in order to attend Rastafarian study groups." (Id.) Potoka further states in his Affidavit that Plaintiff "was never forced to change his religious preference"; Plaintiff "had the option and was free to change his religious preference at any time if he wanted to participate in study groups of a specified religion," but Plaintiff "never made such change." (Id. ¶ 8.) According to Potoka, Plaintiff was not suspended from chapel as a result of any grievance; Potoka states that Plaintiff "violated SCDC policy and procedure by attending religious programs that he was not enrolled in, and as a result of Inmate Plummer's misconduct, he was sanctioned and suspended from attending chapel for a limited time." (Id. ¶ 9; see also id. ¶ 12.)

As a preliminary matter, to the extent Plaintiff contends that Potoka retaliated against Plaintiff "for exercising his grievance KRCI-2412-10 [o]n behalf of the Rastafarian community," (Dkt. No. 25 at 1 of 4), it is not clear this speech is protected, as inmates do not have a constitutional right to act as legal representatives for other inmates. See Smith v. Maschner, 899 F.2d 940, 950 (10th Cir. 1990) (stating a jailhouse lawyer does not have a protected interest in providing legal representation to other inmates); Beese v. Todd, 35 F. App'x 241 (7th Cir. 2002) (unpublished) (stating prisoners have no constitutional right to provide legal assistance to other prisoners); cf. Hummer v. Dalton, 657 F.2d 621, 625-26 (4th Cir. 1981) (a prisoner cannot act as a "knight-errant" for other prisoners).

Even if such speech is protected, Plaintiff's claim against Potoka fails. As noted above, Plaintiff must establish a causal relationship exists between his speech and the defendant's retaliatory action. Suarez Corp., 202 F.3d at 685-86. To make such a showing, Plaintiff must allege facts showing his exercise of a constitutionally protected right was a substantial factor motivating the retaliatory action. See, e.g., Cochran, 73 F.3d at 1318;

Hughes, 48 F.3d at 1387 n. 11. Further, claims of retaliation by inmates are generally regarded with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Cochran, 73 F.3d at 1317; Adams, 40 F.3d at 74.

In the instant case, Plaintiff asserts that Potoka retaliated against Plaintiff for filing a grievance, but Potoka states in his Affidavit that Plaintiff was suspended from the chapel for a definite period of time for failing to comply with SCDC rules and regulations. Plaintiff's allegation of retaliation is conclusory, and such a bare and conclusory allegation of retaliation is insufficient to defeat Potoka's Motion for Summary Judgment. See Adams, 40 F.3d at 74. Furthermore, "temporal proximity" between Plaintiff's filing a grievance and the alleged retaliatory action "is simply too slender a reed on which to rest" a § 1983 retaliation claim. Wagner v. Wheeler, 13 F.3d 86, 91 (4th Cir.1993). In the instant case, no evidence supports Plaintiff's conclusory assertion of retaliation, and no evidence contradicts Potoka's assertion that Plaintiff was suspended from chapel due to violating SCDC rules and policies. In addition, Plaintiff filed the at-issue grievance in 2010, and was suspended from the chapel in April of 2011. On these undisputed facts, Plaintiff's retaliation claim fails. Smith v. Campbell, 250 F.3d 1032, 1038-39 (6th Cir. 2001) (although "the temporal proximity between [the prisoner plaintiff] filing his grievances and the decision to transfer him provides some circumstantial support for a causal connection," the proximity alone was insufficient, and such evidence was "easily overcome by the unrefuted evidence offered by the [prison defendants] that the transfer" occurred because of two incidents in which the plaintiff exhibited "aggressive, belligerent, and intimidating behavior towards other inmates and the staff"); Owens v. FCI Beckley, Civ. A. No. 5:12-03620, 2013 WL 4519803, at *15-16 (S.D.W. Va. Aug. 27, 2013) ("The record does not support a finding that the above conduct was the result of retaliation by Defendant Largent. Defendant Largent had legitimate

reasons for accessing the Wiccan locker and for removing prohibited items."); <u>Cottrell v. Jabe</u>, Civ. A. No. 7:10-cv-00505, 2012 WL 830469, at *12 (W.D. Va. Feb. 17, 2012) (adopted at 2012 WL 830499 (Mar. 5, 2012)) (summary judgment to defendants on a retaliation claim because "the defendants' actions were not in response to Cottrell's exercise of a constitutional right and are supported by a legitimate non-retaliatory reasons"). The undersigned therefore recommends granting summary judgment to Potoka on Plaintiff's retaliation claim.

**8. Free Exercise & RLUIPA Claims**

Plaintiff also attempts to bring a free exercise claim and a claim pursuant to the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq. The Free Exercise Clause of the First Amendment prohibits the adoption of laws designed to suppress religious beliefs or practices. <u>See Morrison v. Garraghty</u>, 239 F.3d 648, 656 (4th Cir.2001). To state an actionable violation under the Free Exercise Clause, a plaintiff must show both that he sincerely held a religious belief and that the defendant's actions substantially burdened his religious freedom or expression. <u>See Blue v. Jabe</u>, 996 F.Supp. 499, 502 (E.D. Va.1996) (discussing <u>Wisconsin v. Yoder</u>, 406 U.S. 205, 215-16 (1972)). The Supreme Court has defined "substantial burden" in a variety of ways, including "putting substantial pressure on an adherent to modify his behavior and violate his beliefs," <u>Thomas v. Review Bd. of Ind. Employment Sec. Div.</u>, 450 U.S. 707, 717-18 (1981), and forcing an individual to "choose between following the precepts of [his] religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of [his] religion . . . on the other," <u>Sherbert v. Verner</u>, 374 U.S. 398, 404 (1963).

In his Motion to Amend (Dkt. No. 48), Plaintiff seeks to change "any reference to the Religious Freedom Restoration Act . . . to the Religious Land Use and Institutionalized

21

Persons Act of 2000." (Dkt. No. 48 at 1 of 2.)[5] The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc et seq., prohibits state programs that receive federal funding from imposing a substantial burden on the religious exercise of an inmate unless the burden is in furtherance of a compelling government interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc–1. The plaintiff bears the burden of persuasion on whether the policy or practice substantially burdens his exercise of religion. See 42 U.S.C. § 2000cc–2(b). The Fourth Circuit has held that "for RLUIPA purposes, a substantial burden on religious exercise occurs when a state or local government, through act or omission, puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006).

In essence, the plaintiff's claims under the Free Exercise clause and the RLUIPA impose the same requirements: the plaintiff must allege facts showing that a particular action by a particular defendant "substantially burdened his sincerely-held religious beliefs." Ajaj v. Federal Bureau of Prisons, Civ. A. No. 08-cv-02006-MSK-MJW, 2011 WL 902440, at *3 (D. Colo. Mar. 10, 2011) (citing Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009) (Free Exercise claim); Kay v. Bemis, 500 F.3d 1214, 1218-19 (10th Cir. 2007) (RLUIPA claim); Watts v. Byars, Civ. A. No. 6:12-1867-JFA-KFM, 2013 WL 4736693, at *10 (D.S.C. Sept. 3, 2013) (because "the defendants are entitled to summary judgment on the plaintiff's RLUIPA claim under the 'more searching' strict scrutiny standard, this court further recommends that the plaintiff's First Amendment claim be dismissed for the same reasons.").

_____

[5]Much of the analysis of a free exercise claim and a claim pursuant to RLUIPA overlaps. Accordingly, Plaintiff's Motion to Amend (Dkt. No. 48) is GRANTED, and any reference to the Religious Freedom Restoration Act is hereby construed as a reference to the Religious Land Use and Institutionalized Persons Act of 2000.

In <u>Turner v. Safley</u>, 482 U.S. 78 (1987), the Supreme Court established the framework for evaluating the validity of prison regulations that restrict inmates' free exercise rights.[6] Under Turner, such restrictions are constitutional if they are "reasonably related" to legitimate penological interests. <u>Id</u>. at 89. The <u>Turner</u> court identified four factors relevant to the reasonableness determination: (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right ... remain open to prison inmates"; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action. <u>Lovelace v. Lee</u>, 472 F.3d 174, 200 (4th Cir. 2006) (citing <u>Turner</u>, 482 U.S. at 89-92).

In the instant case, Plaintiff complains about several alleged interferences with his ability to practice religion. Although Defendants dispute this contention, Plaintiff complains that he must sign up to attend religious services. He also complains that he is not permitted to attend Rastafarian study groups and about his suspension from chapel. The problem with Defendants' motion as to the Plaintiff's RLUPIA and free exercise claims is that, at present, the record contains no information about penological interests. It is well established that a prisoner's sincere desire to practice a religion may be burdened upon a showing that the restriction is reasonably related to legitimate penological interests. <u>See O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 349 (1987) (citing <u>Turner</u>, 482 U.S. at 89). Although Defendants' Memorandum in Support of the Motion for Summary Judgment references several

---

[6]Although <u>Turner</u> involved a regulation, the <u>Turner</u> analysis also applies to individual actions or decisions that interfere with an inmate's religious exercise. <u>See, e.g., Boles v. Neet</u>, 486 F.3d 1177, 1181 n. 4 (10th Cir. 2007) ("'individualized decision to deny a prisoner the ability to engage in religious exercise is analyzed in the same way as a prison regulation denying such exercise'" (quoting <u>Salahuddin v. Goord</u>, 467 F.3d 263, 274 n. 4 (2d Cir.2006)).

penological interests, the Affidavits submitted in support of their motion do not contain such information. The Defendants also reference the text of several SCDC policies as attached to Warden Riley's Affidavit, but the undersigned has been unable to locate such policies. (See Dkt. No. 70-2; Dkt. No. 70-3.) The record also contains no information about alternative means Plaintiff has to practice his religion. In short, the undersigned simply does not have sufficient information to evaluate the Turner factors. The undersigned therefore recommends denying–without prejudice–Defendants' Motion for Summary Judgment on Plaintiff's RLUIPA and free exercise claims.[7]

## 9. Non-Legal Mail

Plaintiff complains that on February 6, 2012, he received notification of rejected mail indicating that his Sports Illustrated magazines "were destroyed by contraband at the instructions of" C. Amason "in violation of prison policy." (Dkt. No. 1 at 3 of 5.) Plaintiff asserts that the "mailroom has been throwing away Plaintiff's magazines and incoming and outgoing mail to family which is being done by SMU Supervisor Captain Tucker who is also head of contraband at Kershaw C.I." (Id.)

To the extent Plaintiff complains that Amanson destroyed a magazine "in violation of prison policy," an allegation that Amason allegedly did not follow SCDC policy does not, in itself, amount to a constitutional violation. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir.1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."); Keeler v. Pea, 782

---

[7]Should the District Judge adopt the instant Report and Recommendation, the undersigned recommends requiring Defendants to file a supplemental Motion for Summary Judgment, if any, within thirty days of the District Judge's Order.

F.Supp. 42, 44 (D.S.C.1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

However, prisoners do have a limited liberty interest in their mail under the First Amendment. See Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); see also Bolding v. Holshouser, 575 F.2d 461, 464-65 (4th Cir.1978). Prison actions that affect an inmate's receipt of non-legal mail must be "reasonably related to legitimate penological interests." Thornburgh, 490 U.S. at 409; see also Turner, 482 U.S. 89-90 (setting forth four factor test); Bell, 441 U.S. 520.

In their Motion for Summary Judgment, Defendants contend that, pursuant to SCDC policy, inmates housed in the Special Management Unit ("SMU") are not allowed to receive newspapers or magazines. (See Dkt. No. 70-1 at 9.) Defendants assert that such a policy is "clearly related to legitimate penological interest in promoting good behavior and conformance with prison rules and regulations." (Id.) Again, although Defendants reference the Affidavit of Warden Riley in support of this contention, Riley's Affidavit does not delineate such a policy, nor does Riley explain the penological interests in such a policy. (See generally Dkt. No. 70-2.) Furthermore, Defendants have not addressed Plaintiff's claim that his mail to and from his family has been thrown away. Simply put, a proper assessment of Plaintiff's claim related to his non-legal mail requires more evidence than the record currently contains. See Turner, 482 U.S. 89-90 . The undersigned therefore recommends denying Defendants' motion–without prejudice to re-file–as to the instant claim.

## CONCLUSION

Wherefore, it is ORDERED that Plaintiff's Motion to Amend (Dkt. No. 48) is GRANTED, such any reference to the Religious Freedom Restoration Act is hereby construed as a reference to the Religious Land Use and Institutionalized Persons Act of 2000.

AND IT IS SO ORDERED.

Wherefore, it is RECOMMENDED that Defendants' Motion for Summary Judgment (Dkt. No. 70) be GRANTED IN PART and DENIED IN PART. Specifically, the undersigned recommends denying, without prejudice, Defendants' motion as to the following claims: (a) Plaintiff's free exercise claims; (b) Plaintiff's claims pursuant to the Religious Land Use and Institutionalized Persons Act of 2000; and (c) Plaintiff's claims related to his non-legal mail. The undersigned recommends granting Defendants' motion as to all other claims.

IT IS SO RECOMMENDED.


s/Bruce Howe Hendricks
United States Magistrate Judge

February 26, 2014
Charleston, South Carolina


**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).